708 So.2d 106 (1997)
KMART CORPORATION and Doug Sharp
v.
Sonja PERDUE.
KMART CORPORATION and Doug Sharp
v.
Deborah CAMERON.
1950845, 1950846.
Supreme Court of Alabama.
June 13, 1997.
As Modified on Denial of Rehearing December 19, 1997.
*107 Walter R. Byars, Peck Fox, and Debra T. Lewis Loard of Steiner, Crum & Baker, Montgomery; and Mark Boardman of Boardman & Tyra, Birmingham, for appellants.
James R. Morgan, Birmingham; Daniel B. Feldman of Hammond, Feldman & Lehane, P.C., Birmingham; and Mark D. McKnight, Birmingham, for appellees.
BUTTS, Justice.
Deborah Cameron and Sonja Perdue brought separate actions against Kmart Corporation and its agent/employee Doug Sharp, alleging claims of malicious prosecution and false arrest. Perdue also included claims alleging conversion and assault and battery. Each complaint alleged that Sharp, acting as a loss control manager of a Kmart store in Bessemer, had detained the plaintiff on suspicion of shoplifting and had done so without probable cause and that the plaintiff was wrongfully arrested on the charge. Perdue alleged that Sharp used undue force in detaining her on suspicion of the charge. Perdue's complaint also alleged that a Kmart employee stole a watch belonging to Perdue, while she and Cameron were being detained. The cases were consolidated for trial. The jury returned a general verdict for Cameron, awarding damages of $2 million, and a general verdict for Perdue, likewise awarding her $2 million; the trial court then entered judgments on these verdicts.
Kmart Corporation and Sharp filed motions challenging the verdict and, in the alternative, seeking a remittitur of the damages awards. In these motions, they alleged, among many other things, that the trial court had erred in submitting general verdict forms to the jury. On the 91st day from the filing of these motions, the trial court entered an order purporting to grant the motion for a new trial, holding that it had erred in denying the defendants' objection to the general verdict forms. However, because the motion was not ruled on within 90 days, the motion was deemed to have been denied. Thus, the court's order entered on the 91st day was a nullity. See Rule 59.1, Ala. R. Civ. P. Kmart and Sharp appealed from the judgments.
*108 The defendants first argue that the plaintiffs failed to establish the elements of their claim of malicious prosecution and that this claim was therefore a "bad count" and should not have been submitted to the jury. In an action alleging malicious prosecution, the plaintiff must prove (1) that there was a judicial proceeding initiated by the present defendant; (2) that it was initiated without probable cause; (3) that it was initiated with malice on the part of the present defendant; (4) that that judicial proceeding was terminated in favor of the present plaintiff; and (5) that the present plaintiff suffered damage from the prosecution of that earlier action. Alabama Power Co. v. Neighbors, 402 So.2d 958 (Ala.1981).
The record reveals the following: At some point before March 23, 1994, Roger Hurt, the regional loss control supervisor for Kmart, contacted the control loss officers in all Birmingham area Kmart stores and alerted them that two females, Deborah Cameron and Sonja Perdue, had been repeatedly bringing merchandise into Kmart stores without a receipt and requesting cash refunds. Hurt told Doug Sharp, the loss control supervisor for the Bessemer Kmart store, that the two women had visited most of the Kmart stores in the Birmingham area, bringing in expensive items of merchandise, without sales receipts, and that Kmart had sustained thousands of dollars in losses from supplying the two women with cash "refunds" for the merchandise. He stated that, based on this pattern of activity, he believed the two were repeatedly shoplifting merchandise from Kmart and then returning it for cash. Hurt instructed all the area Kmart loss control managers, including Sharp, to watch for the two women and to closely monitor their activities to determine whether they were conducting such a scheme.
Sharp duly informed the employees at the Bessemer Kmart store to watch for Cameron and Perdue and to alert him if they came into the store. On the evening of March 24, after Sharp had gone home for the night, Cameron and Perdue approached the service desk, with Cameron standing behind Perdue. Perdue presented a shower curtain to the service desk employee, Teresa White, and asked to exchange it. Perdue did not have a receipt for the shower curtain; she stated that she had bought the shower curtain at a different Kmart store, but she could not say with certainty which Kmart store she had bought it from. When White asked Perdue for identification, White recognized that Perdue was one of the women Sharp had been instructed to watch for. She alerted the store manager, who immediately telephoned Sharp and informed him that Perdue was in the store.
After about five minutes, White told Perdue that she could not exchange the shower curtain without a receipt. Although White said she thought Perdue had left the store after being refused the exchange, she could not later say whether Perdue had re-entered the store through the "Garden Center" entrance, and she could not say how long Perdue had been in the store before she approached the service counter to attempt the exchange. At some point, Perdue left the Kmart store and went into a store next door, while Cameron remained in the Kmart store. Cameron was also carrying merchandise, but she did not ask for a cash refund for that merchandise; instead, after Perdue was refused a cash refund, Cameron put the package she had been carrying into a shopping cart and began to walk around the store.
Sharp subsequently arrived and viewed a store security videotape supplied to him by the loss control officer on duty in the store. Sharp then went next door to the store where Perdue had gone and asked to speak with her. According to Perdue, Sharp held her arm as he led her back into the Kmart store. The evidence conflicts as to who took Perdue to a loss control room in the Kmart store; however, after she was detained, Sharp returned to the main part of the store to observe Cameron. According to Sharp, Cameron lingered in the drapery department, then took a set of drapes and put them into her purse. She then began pushing her shopping cart through the store, while Sharp followed her. At the front of the store, Cameron pushed her shopping cart up to a closed check-out line, left the cart, and took her purse to leave. Sharp then apprehended her; however, it is disputed as to whether he *109 did so while Cameron was still inside the store.
Cameron and Perdue were detained in separate control loss rooms, both with Kmart personnel, and Sharp recovered two sets of draperies. There is evidence that each woman accused the other of "making her steal this merchandise," and both Sharp and the store manager testified that Cameron confessed to taking the draperies. The Bessemer police then arrived and arrested the two women on charges of third-degree theft. Perdue pleaded guilty on this charge, but Cameron pleaded not guilty and was tried in the Bessemer Municipal Court. During this proceeding, Sharp testified that a loss control officer, Odora Beckwood, had assisted him in detaining the two women, and Beckwood corroborated this. Cameron was convicted, and the two women were sentenced to 30 days in jail.
Cameron and Perdue appealed to the Jefferson Circuit Court, Bessemer Division. Before the trial de novo in the circuit court, and after her employment with Kmart had been terminated for unrelated reasons, Beckwood recanted her testimony. At trial the evidence conflicted as to whether Sharp personally had seen Perdue stealing merchandise or had merely viewed this on a store security tape before he apprehended her at a store next to the Kmart store. The two women were acquitted in the circuit court, and they then filed against Kmart and Sharp the actions that led to the judgments now here on appeal.
The defendants argue that, while some of the evidence conflicts, the plaintiffs did not present sufficient evidence of the elements of malicious prosecution to justify sending that claim to the jury. The defendants argue that the convictions in the municipal court were prima facie evidence of probable cause to initiate the criminal prosecution. We first note that malicious prosecution cases are not favored at law; this Court has consistently recognized that public policy requires that all persons be able to resort freely to the courts for redress of wrongs and to enforce their rights, and that they be able to do so without the peril of an action for damages in the event of an unfavorable judgment by jury or judge. Delchamps, Inc. v. Morgan, 601 So.2d 442 (Ala.1992). Moreover, there is a different standard for determining whether there was a want of probable cause where the prior proceeding was a criminal case rather than a civil case. Brown v. Parnell, 386 So.2d 1137 (Ala.1980). Where, as here, there was a prior conviction in a criminal case, the judgment of conviction is prima facie evidence of the existence of probable cause for initiating the action, even if the conviction was later vacated and the accused discharged. Parnell. This prima facie showing of probable cause for the arrest may be rebutted only when the evidence clearly overcomes the presumption arising from the fact of the conviction. Parnell. This is so because, while a subsequent reversal of the conviction may indicate that the accused was not guilty, it does not prove or suggest that the present defendant did not have probable cause to believe that the accused was guilty. Delchamps.
The defendants also argue that Sharp's testimony that he observed Cameron and Perdue conceal merchandise belonging to Kmart and then attempt to leave the store without paying for that merchandise also constitutes probable cause for initiating the judicial proceedings against them. The defendants point out that this Court has defined "probable cause" as that term is used in a malicious prosecution case to mean "`such state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'" Delchamps, 601 So.2d at 445 (quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 134, 229 So.2d 514, 521 (1969)). The question is not whether Cameron and Perdue were guilty of shoplifting, but whether Sharp in fact saw events that would have led him to believe that they were. Delchamps.
The evidence clearly shows that Sharp had been warned by his regional loss control supervisor that Cameron and Perdue had a suspicious pattern of returning expensive merchandise without a receipt and asking for cash refunds, that this practice was costing Kmart stores thousands of dollars, and that *110 there was strong reason to suspect them of shoplifting. On the night in question, Perdue attempted to return merchandise without having a cash receipt, and Sharp saw Cameron putting a set of draperies into her purse. Eyewitnesses testified that, while being separately detained, each of the two incriminated the other and that neither denied to the police that she was guilty. There was evidence, although disputed, that while being detained each woman indicated to Kmart employees that the other woman had instigated taking the draperies. Finally, in the municipal court proceedings Cameron was found guilty of shoplifting and Perdue pleaded guilty to that same offense. Based upon this evidence, we conclude that Cameron and Perdue failed to establish that Sharp and Kmart acted without probable cause in initiating the criminal proceedings against them; thus, the malicious prosecution claims should not have been submitted to the jury.
We likewise agree with the defendants that the plaintiffs' claims alleging false arrest should not have been submitted to the jury. False arrest, or false imprisonment, consists of "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala.Code 1975, § 6-5-170. An Alabama statute provides:
"[A] merchant or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a ... merchant or merchant's employee shall not render such ... merchant or merchant's employee criminally or civilly liable for false arrest, false imprisonment or unlawful detention."
Ala.Code 1975, § 15-10-14. The evidence is sufficient to show that Kmart, acting through its agent Sharp, had probable cause to detain Cameron and Perdue and had reason to believe that detaining them might lead to the recovery of goods that Kmart held for sale. The trial court thus erred in denying the defendants' motions for a directed verdict and then later for a JNOV on the false arrest and malicious prosecution claims.
Kmart and Sharp next argue that the evidence was insufficient to prove assault and battery. According to Perdue, Sharp held her arm when, after apprehending her, he led her into the loss control room; she argued at trial that his holding her arm amounted to assault and battery. Cameron testified that Sharp threatened to handcuff her when he detained her. In Wright v. Wright, 654 So.2d 542, 544 (Ala.1995), quoting from Allen v. Walker, 569 So.2d 350, 351 (Ala.1990), the Court defined "assault":
"`[A]n intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'"
A battery occurs when one actually touches another in a hostile manner. Surrency v. Harbison, 489 So.2d 1097 (Ala.1986). The only evidence as to this claim is evidence that Sharp held Perdue's arm to detain her, after he had viewed the security tape and determined that there was probable cause to detain her on suspicion of shoplifting. There is no evidence that Sharp used any more force than was necessary to ensure that Perdue and Cameron were detained; thus, the trial court erred in denying the defendants' motion for directed verdict, and then, later, their motion for JNOV, on Perdue's assault and battery claim.
Kmart and Sharp also argue that the evidence does not support Perdue's claim of conversion. To establish a conversion, the plaintiff must show that the defendant wrongfully exercised dominion over property in exclusion or defiance of a plaintiff's rights, where the plaintiff has the immediate right to possession of the property. Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384 (Ala.1994). According to Perdue, she was carrying a watch in her purse when she entered the loss control room at Kmart after Sharp apprehended her. She claims that the *111 contents of the purse were spread out onto a counter and that the watch was missing from her purse when the purse was returned to her. Perdue concludes from this that a Kmart employee, possibly Sharp himself, stole the watch, or is at least responsible for its loss because, she says, it was placed on the table during a detention that she believes was unlawful.
The record reveals no evidence, other than Perdue's testimony, that a watch was among the contents in her purse. Sharp testified that he did not see a watch on the table with Perdue's other belongings and that he had no knowledge of the watch. The evidence shows only that the contents of Perdue's purse were searched in the course of a lawful detention. Because there is nothing more than Perdue's own allegations to support her claim that a Kmart employee took the watch from her, the defendants were entitled to a directed verdict, or a JNOV, on Perdue's conversion claim.
In view of the foregoing, the judgment entered by the trial court on the jury verdict in favor of Cameron and Perdue is reversed, and the cause is remanded for the entry of an order consistent with this opinion.
1950845 REVERSED AND REMANDED.
1950846 REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, and SEE, JJ., concur.
ALMON, HOUSTON, and COOK, JJ., concur in part and dissent in part.
HOUSTON, Justice (concurring in part and dissenting in part).
Perdue presented substantial evidence of conversion; therefore, I dissent as to that issue. However, I concur with the remainder of the opinion, using the reasoning in Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981).
ALMON and COOK, JJ., concur.