The City of Gadsden prosecuted Layne K. Lawder for plumbing without a license, in violation of a city ordinance. The municipal court convicted Lawder of the charge; however, Lawder appealed to the Etowah Circuit Court, where a jury found him not guilty. Lawder then sued the City and Brent Brewer, the City's plumbing inspector, seeking damages based on allegations of malicious prosecution on the part of Brewer and fraud on the part of Brewer and the City. A jury returned a verdict in favor of Lawder and against Brewer on the malicious prosecution claim and a separate verdict against both the City and Brewer on the fraud claim. The jury awarded $20,000 in compensatory damages and $10,000 in punitive damages for malicious prosecution, and $50,000 in compensatory damages for fraud; the trial court entered a judgment on those verdicts. The City and Brewer appealed to this Court which transferred the appeal to the Court of Civil Appeals, pursuant to Ala. Code 1975, § 12-2-7 (6). The Court of Civil Appeals, with one judge concurring in the result and one judge dissenting, affirmed the judgment. SeeBrewer v. Lawder, 718 So.2d 707 (Ala. 1997), for a better understanding of the circumstances surrounding this case. We granted the City and Brewer's petition for certiorari review to consider whether the Court of Civil Appeals erred in holding that the evidence was sufficient to submit the malicious prosecution and fraud claims to the jury. We reverse and remand.
The following pertinent facts, as set out in the opinion of the Court of Civil Appeals, are undisputed:
 "On January 9, 1992, after being notified that construction was taking place at Lawder's residence, Brewer went with Gadsden's building inspector[, Brian Harbison,] to inspect Lawder's residence. Lawder, who was not a plumber and who had never had a plumbing license, was conducting extensive repairs on his home, such as leveling the foundation, removing the chimney, replacing most of the wiring in the home, and replacing the plumbing. At the time of the inspection, Lawder had installed a PVC pipe where the kitchen sink would eventually be installed. Also, he had installed a washer box, which provides a place for faucets and a drain for a clothes washer.
 "Brewer, in accord with standard policy, secretly tape recorded the conversation during the inspection. Brewer informed Lawder that the work he had completed at his home was in violation of the law. Further, he told Lawder that to comply with the law, Lawder would have to hire a plumber or become a plumber. Lawder responded by telling Brewer that he had been doing the work himself because he could not afford to hire a plumber. Brewer informed Lawder that a warrant would be issued if he did not comply with the law.
 "On January 10, 1992, Lawder received a certified letter from Brewer. The letter stated that it was a stop-work order. It also gave Lawder 10 working days to comply with the requirements or, it said, Brewer would be forced to take legal action against Lawder. Lawder ceased all work, but never obtained a plumbing permit. *Page 718 
 "On February 18, 1992, Brewer swore out a warrant for Lawder's arrest, charging him with plumbing without a license in violation of the city ordinance. Before swearing out the warrant, Brewer checked the city records to determine whether Lawder had received a permit. However, Brewer did not visit Lawder's premises again, nor did he have any further discussion with Lawder. On February 24, 1992, Lawder received notice of the warrant for his arrest, and on February 25 he turned himself over to the Gadsden Police Department."
718 So.2d at 710.
In addition to these facts, we note that the record indicated, without dispute, that Brewer discussed Lawder's work with Brian Harbison, Brewer's supervisor, and that Harbison instructed him to obtain a warrant for Lawder's arrest.
The malicious prosecution claim was based on allegations that Brewer lacked probable cause to have Lawder arrested. Lack of probable cause is an essential element of a cause of action for malicious prosecution, see S.S. Kresge Co. v. Ruby, 348 So.2d 484
(Ala. 1977), and it was incumbent upon Lawder to present clear evidence to overcome the presumption of probable cause that was created when the municipal court convicted him of violating the City's ordinance. See Kmart Corp. v. Perdue, 708 So.2d 106 (Ala. 1997); Delchamps, Inc. v. Larry, 613 So.2d 1235 (Ala. 1992);Gunter v. Pemco Aeroplex, Inc., 646 So.2d 1332 (Ala. 1994) (a conviction is prima facie evidence of probable cause for initiating the prosecution, even if the conviction is later overturned). "This Court has defined the term `probable cause' as that term is used in malicious prosecution actions as `such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'"Delchamps, Inc. v. Morgan, 601 So.2d 442, 445 (Ala. 1992), quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 134,229 So.2d 514, 521 (1969).
Brewer contends that whether he had probable cause to have Lawder arrested was contingent on whether he reasonably could have believed that Lawder had committed a crime. The City's ordinance stated:
 "It shall be unlawful for any person to do or perform, or to contract, direct or superintend any plumbing within the city unless such person has first received a certificate of competency, and unless such certificate is in force and effect at the time such plumbing is done, directed or superintended."
According to Brewer, he based his decision to have Lawder arrested on his interpretation of Ala. Code 1975, § 34-37-15, which the City had incorporated into its ordinance, and which, at the time this problem arose, provided in pertinent part:
 "The following acts, work and conduct may be performed by anyone, without a license or certificate . . .:
 "(1) Plumbing work done by a property owner in or about a building owned or occupied by him so long as such plumbing work does not necessitate tying into waste or sewer lines on the outlet side of a trap.[1]
(Emphasis added.)
Brewer interpreted this statute as prohibiting any kind of plumbing by an unlicensed property owner, on the outlet side of a trap, that would eventually have to be tied into the City's waste or sewer lines. Lawder took the position that no violation could have occurred under the statute until he had actually tied his plumbing into the city waste and sewer lines. The evidence indicated that Lawder had installed a PVC pipe, although he had not connected it to any appliance. *Page 719 
The evidence also indicated that no "trap" (a p-trap, installed under a sink to form a water seal) had been installed; therefore, Lawder insisted that his work could not have been on the outlet side of a trap, which, he argued, was necessary to constitute a violation of the statute. The trial court agreed with Lawder's interpretation and concluded, as did the Court of Civil Appeals, that a jury question was presented as to whether Brewer reason ably could have believed that Lawder had committed a crime. Brewer contends, however, that all of the pertinent facts surrounding his decision to have Lawder arrested were undisputed and that, because the question of probable cause centered around his interpretation of a statute, it was one for the court, not the jury.
The record indicates that there were no material facts in dispute concerning the nature or the extent of Lawder's plumbing work. The primary dispute concerned whether Lawder had violated § 34-37-15. Under these circumstances, the question whether the facts constituted probable cause was one of law for the court and not an issue for the jury to decide. Delchamps, Inc. v.Larry, supra; Gulf States Paper Corp. v. Hawkins, 444 So.2d 381
(Ala. 1983). We note that both Brewer and Lawder spent a great deal of time arguing to the trial court that his own interpretation of § 34-37-15 was the correct one. They have made the same arguments to this Court. Indeed, the interpretation of the statute is certainly a central issue in this case, for if the statute meant what Brewer says it meant, then, as a matter of law, Brewer had probable cause to have Lawder arrested. However, we find it unnecessary to interpret § 34-37-15, which, as we have noted, has since been amended. See n. 1, supra. The basic question here is not whether Lawder was in fact guilty of plumbing without a license, in violation of the City's ordinance and § 34-37-15, but whether Brewer reasonably could have believed that he was, i.e., whether Brewer could have entertained an honest and strong suspicion that Lawder was in violation of the law. See Delchamps, Inc. v. Larry, supra; Kmart Corp. v.Perdue, supra.
After examining the record, the briefs, and the statute, we conclude that even if the statute meant what Lawder says it meant, Brewer still had probable cause to have Lawder arrested. The statute provided that plumbing work by an unlicensed property owner was legal, but only if the work did not "necessitate tying into waste or sewer lines on the outlet side of a trap." "Necessitate" is defined as "to make necessary." Webster'sCollegiate Dictionary (10th ed. 1997). "Necessary" is defined as "of an inevitable nature; logically unavoidable; absolutely needed." Id. Assuming, without deciding, that the statute was ambiguous, we nonetheless conclude that Brewer's interpretation of it (i.e., that it prohibited any kind of plumbing by an unlicensed property owner, on the outlet side of a trap, that would eventually have to be tied into the City's waste or sewer lines) was entirely reasonable, notwithstanding the fact that a court, or even the Legislature, might ultimately reach a different conclusion as to its meaning.
The undisputed facts in this case indicated that Lawder's plumbing work (which consisted of permanent drainage, waste, or vent piping) would have been on the outlet side of a trap once Lawder had installed the trap, and that the plumbing he had installed eventually would have had to be tied into the City's waste or sewer lines in order to be functional. Brewer testified that it would be impossible to install a p-trap without the prior installation of the kind of piping Lawder had installed. Brewer's interpretation of the statute was approved by his supervisor, who instructed him to secure the arrest warrant. We hold, based on the undisputed facts, that Brewer reasonably could have believed that Lawder had committed a crime by doing plumbing work without a license (or without hiring a licensed plumber) and without a permit, and, therefore, that Lawder failed to present sufficient evidence to overcome the presumption of probable cause that resulted from his municipal court conviction. The trial court erred to reversal in submitting the malicious prosecution claim to the jury.
The fraud claims were based on allegations that Brewer had made a false representation *Page 720 
to Lawder in his January 10, 1992, letter. That letter stated:
 "Mr. Lawder, you are in direct violation of local and state plumbing codes. As I talked to you January 9, 1992, stating that you cannot install plumbing without first obtaining a State of Alabama Master Plumbers card, a City of Gadsden Master Plumbers registration card and a City of Gadsden Plumbing License. Before a City of Gadsden Plumbing license can be obtained, you must have a minimum of $100,000.00 liability insurance. After these requirements have been met and before the plumbing work begins, a permit must then be purchased. By State law there is not a homeowners plumbing permit available. You can contract a licensed plumber who is allowed to purchase a plumbing permit and install the plumbing.
 "Mr. Lawder, I am officially issuing in this letter a stop work order until you meet these requirements or contract a licensed plumber with the City of Gadsden to install the plumbing.
 "City of Gadsden Code of Ordinances — Section 6-125 — Certificate of competency required to contract, direct or superintended any plumbing.
 "`It shall be unlawful for any person to do or perform, or to contract, direct or superintend any plumbing within the city unless such person has first received a certificate of competency, and unless such certificate is in force and effect at the time such plumbing is done, directed or superintended.'
 "Mr. Lawder, this is a warning to you to make the necessary corrections within (10) ten working days
upon receipt of this letter or I will be forced to take legal action against you."
Brewer testified that he intended to have Lawder arrested if he did not within 10 days become a licensed plumber and secure a permit or hire a licensed plumber and secure a permit. Over the objections of Brewer and the City, the trial court submitted Lawder's fraud claims (based on allegations of mistaken and reckless misrepresentation) to the jury, on the basis of Lawder's argument that the letter created the false impression that if he ceased work on his plumbing no legal action would be taken against him. It was this false impression, Lawder says, that constituted the false representation as to Brewer's intentions. According to Lawder, the false representation was of a material, existing fact — that fact being Brewer's intention to have Lawder arrested if he did not within 10 days become a licensed plumber and secure a permit or hire a licensed plumber and secure a permit. Lawder has reiterated that argument in this Court. Brewer and the City contend that even if the letter could have led Lawder to believe that stopping work would insulate him from prosecution, Lawder's allegations of fraud were nonetheless promissory in nature, involving a future act — a promise not to prosecute. They argue that the evidence could not support a verdict on the mistaken and reckless misrepresentation claims (because Lawder's allegations of fraud were actually promissory in nature and, thus, sought recovery for an intentional tort), and that the City could not be liable for an intentional tort, as a matter of law.
A false representation is an essential element of a fraud claim. P S Business, Inc. v. South Central Bell Telephone Co.,466 So.2d 928 (Ala. 1985). Finding sufficient evidence of a false representation, the Court of Civil Appeals held as follows:
 "The fraud claim centers on the letter of January 10, 1992, which Lawder received from Brewer. The letter states that it is a `stop work order.' Further, it states that Lawder could comply with the law by hiring a plumber. At the close of the letter, Brewer states a warning to Lawder to `make the necessary corrections within 10 days' or Brewer would be `forced to take legal action.' Lawder offered the letter to show that, read reasonably, it could lead to the belief that Lawder was to cease work or Brewer would take legal action. Further, Lawder was given instructions on what he could do to legally complete the work at his home. Lawder offered evidence that he ceased all work and, thus, understood from the letter that no legal action would be taken against him. *Page 721 
 "Thus, we find that Lawder presented substantial evidence from which a jury could infer that the city and Brewer intentionally made a misstatement that Lawder relied on to his detriment. Therefore, the trial court properly denied the motion for directed verdict and did not err by charging the jury on fraud."
718 So.2d at 712.
We question the holding of the Court of Civil Appeals that the letter, read reasonably, could have led Lawder to believe that if he ceased work he would not be prosecuted;[2] however, we are convinced that Lawder's allegations of fraud can only be characterized as promissory in nature, that is, they allege that the City, through Brewer, had promised in the January 10, 1992, letter not to prosecute Lawder if he would stop his plumbing work immediately. We note that even if, as Lawder argues, the January 10, 1992, letter is characterized as containing a false representation as to the City's existing legal postion, Lawder's claim is nonetheless based on allegations that Brewer falsely represented in the letter that he would abstain from some act in the future — prosecuting Lawder. Such a claim is unquestionably one of promissory fraud. See Cabnetware, Inc. v. Birmingham SawWorks, Inc., 614 So.2d 1034 (Ala. 1993) (defining promissory fraud). Promissory fraud is an intentional species of fraud, requiring proof of an intent to deceive. Section 11-47-190, Ala. Code 1975, absolves a city from liability for an intentional tort committed by one of its agents, including a tort such as promissory fraud. Altmayer v. City of Daphne, 613 So.2d 366 (Ala. 1993). Based on the above, we hold that the trial court erroneously submitted Lawder's fraud claims to the jury.
The judgment of the Court of Civil Appeals is reversed and the case is remanded.
REVERSED AND REMANDED.
MADDOX, ALMON, SEE, and LYONS, JJ., concur.
HOOPER, C.J., concurs in the result.
KENNEDY, J., dissents.
[1] This section was amended by Ala. Acts 1992, Act No. 92-182. It now provides, in pertinent part, as follows:
 "(a) The following acts, work, and conduct may be performed by anyone, without [a] license or certificate . . .:
 "(1) Plumbing work done by a property owner in or about a building owned or occupied by him or her."
[2] The letter informed Lawder that he was "in direct violation of local and state plumbing codes"; that he either had to become a licensed plumber and secure a permit or hire a licensed plumber and secure a permit; that he had to "stop work" until he met the requirements for becoming a licensed plumber and secured a permit or hired a licensed plumber and secured a permit; and that he had 10 working days "to make the necessary corrections" in order to avoid legal action. The words "to make the necessary corrections" appear to refer to Brewer's admonition to Lawder earlier in the letter to comply with the local and state plumbing laws by becoming a licensed plumber himself and securing a permit or by hiring a plumber and securing a permit.