932 So.2d 895 (2005)
Ex parte CITY OF TUSKEGEE, John Moon, Theodore Moon, Willie Dean Ware, and Adrienne Baker.
(In re Patricia Arnold
v.
City of Tuskegee, John Moon, Theodore Moon, Willie Dean Ware, and Adrienne Baker).
1040062.
Supreme Court of Alabama.
December 30, 2005.
*898 N. Gunter Guy, Jr., and Emily C. Marks of Ball, Ball, Matthews & Novak, P.A., Montgomery, for petitioners.
Phillip D. Segrest, Jr., of Segrest, Segrest & Weldon, Tallassee, for respondent.
SMITH, Justice.[1]
The City of Tuskegee, John Moon, Theodore Moon, Willie Dean Ware, and Adrienne Baker (collectively "the petitioners"), the defendants below, petition for a writ of mandamus directing Judge Howard F. Bryan of the Macon Circuit Court to grant their motion to stay discovery and their motion for a summary judgment on the basis that they are entitled to immunity. We grant the petition in part and deny it in part.

*899 Facts and Procedural History

Patricia Arnold was arrested by the City of Tuskegee Police on October 17, 1995. She was charged with harassment and released on her personal recognizance. Arnold made an appearance before the Tuskegee municipal court on October 26, 1995. After Arnold appeared before the municipal court, records show that Judge Robert Thompson of the Tuskegee Municipal Court placed the case against Arnold "on hold." The municipal court did not make a final determination as to the merits of the harassment charge and did not issue a final order in the case. The harassment case against Arnold remained "on hold," and the municipal court never placed the case back on the court's docket. Arnold did not receive any further notice or a summons in relation to the harassment case.
The petitioners claim that in 1998 Michael Ricks, the chief of police for the City of Tuskegee, asked the municipal court clerk's office to update the "writ" files. Willie Dean Ware, the clerk of the municipal court, testified that when he realized that the municipal court had many pending or unresolved "writ" files, he instructed municipal court personnel to "clean up" those files. Adrienne Baker, a municipal magistrate for the City of Tuskegee, stated that in the process of "cleaning up" the files, she issued a capias warrant for Arnold's arrest for "fail[ure] to appear before the court as ordered" on the harassment charge that had been pending against Arnold since 1995. Although it appears from the record that Arnold never "failed to appear before the court as ordered," Baker stated in an affidavit that she decided to issue the warrant to resolve the pending charge against Arnold because she believed that she could not "resolve a pending criminal case until a Judge has made and issued a final order in the matter."
On May 3, 2001, Arnold was present in the Tuskegee Municipal Court to serve as a witness in a case unrelated to the harassment case. John Moon, a police officer for the City of Tuskegee, stated in an affidavit in Arnold's case that he was at the municipal court complex on May 3 and that a municipal court employee notified him that Arnold had an outstanding warrant for her arrest. John Moon also stated in the affidavit that after he was notified of the existence of the warrant, he called the Tuskegee Police Department and spoke with his brother, Theodore Moon, to verify the existence of an outstanding warrant for Arnold's arrest. Theodore Moon, a police officer for the City of Tuskegee and the patrol commander on duty at that time, testified in an affidavit that he told John Moon that a warrant for Arnold had been located. John Moon also stated that he left the courthouse, picked up the warrant from police department headquarters, returned to the municipal courthouse, and arrested Arnold.
After Arnold was arrested, she signed a statement indicating that she had appeared in court in 1995 on the harassment charge but that the charges against her had been dropped. Arnold was released on bond later that day. On May 17, 2001, Judge Albert Bulls of the municipal court dismissed the harassment charge against Arnold and ordered that her cash bond be returned.
On September 20, 2001, Arnold sued the City of Tuskegee and other fictitiously named parties in the Macon Circuit Court. After some preliminary written discovery, Arnold amended her complaint to add a federal § 1983 claim.[2] The action was *900 then removed to the United States District Court for the Middle District of Alabama.
On October 24, 2002, Arnold filed a notice of dismissal without prejudice of her federal claim under Rule 41 of the Federal Rules of Civil Procedure. On December 5, 2002, Arnold refiled her complaint in the Macon Circuit Court alleging only state-law claims against the petitioners. The individual defendants were sued in both their individual and official capacities. Arnold alleges that she was falsely arrested and falsely imprisoned, and she seeks recovery based upon two theories. First, Arnold alleges that the false imprisonment and false arrest were the result of the carelessness, negligence, and unskillfulness of the petitioners. In the alternative, Arnold alleges that she suffered damages from false imprisonment and false arrest as a result of the bad faith, malice, or willfulness of the petitioners. More specifically, Arnold alleges that the outstanding warrant on which her arrest was based may have actually been "fabricated" or "concocted" subsequent to her arrest.
Arnold filed and served interrogatories and requests for document production with her complaint. However, the petitioners never responded to these discovery requests. In February 2003, Arnold moved to compel discovery, and she noticed the depositions of the individual defendants. On February 27, 2003, the petitioners filed a motion to stay discovery pending the trial court's ruling on a motion for a summary judgment. The petitioners ultimately filed a motion for a summary judgment on May 6, 2003. On June 24, 2003, a hearing was held on the motion to stay discovery, and on September 1, 2004, the trial court entered an order denying the motion to stay discovery. The trial court found that "there are substantial issues concerning immunity" that "cannot be adequately addressed pending the completion of a substantial amount of discovery." The trial court did not rule on the summary-judgment motion. The petitioners then filed this petition for a writ of mandamus asking this Court to direct the trial court to grant their motion to stay discovery and their motion for a summary judgment.

Standard of Review
"A writ of mandamus is an extraordinary form of relief." Ex parte Alabama Dep't of Mental Health & Mental Retardation, 837 So.2d 808, 810 (Ala.2002). "[A] writ [of mandamus] will issue only upon a showing of `(a) a clear legal right in the petitioner to the order sought, (b) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (c) the lack of another adequate remedy, and (d) the properly invoked jurisdiction of the court.'" Ex parte Puccio, 923 So.2d 1069, 1072 (Ala.2005) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala. 2001)).

Discussion
"While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus." Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000). The petitioners argue that because they are entitled to absolute immunity this Court can properly review whether a summary judgment is proper. However, Arnold alleges that this petition is "premature" because the trial court has not yet ruled on the petitioners' summary-judgment motion.
In Ex parte Alabama Department of Mental Health & Mental Retardation, the plaintiff sued the Alabama Department of Mental Health and Mental Retardation ("the department"), its commissioner, and *901 certain employees, alleging negligence. The defendants filed a motion to dismiss, which the trial court denied. They then petitioned for a writ of mandamus, asking this Court to direct the trial court to dismiss the action on the ground of immunity.
We held that the motion to dismiss was due to be granted as to the claims brought against the department because, as an agent of the State of Alabama, the department was immune from suit under Ala. Const. 1901, § 14.[3]Department of Mental Health, 837 So.2d at 810-11. The Court also held that the motion to dismiss was due to be granted as to the claims brought against the commissioner in her official capacity because she was entitled to immunity from suit under Ala. Const. 1901, § 14. Department of Mental Health, 837 So.2d at 811. However, the Court held that the petition for the writ of mandamus was not due to be granted as to the claims brought against the commissioner in her individual capacity. 837 So.2d at 814. The Court stated:
"[The respondent] notes that no discovery has been conducted in this case, and she argues that the Department's petition for the writ of mandamus is premature. . . . [N]ormally the determination as to the existence of [an immunity-based] defense should be reserved until the summary-judgment stage, following appropriate discovery. . . .
". . . .
"The claims against [the petitioner] that we have determined are made against her in her individual capacity are fact intensive . . . . After the parties have had the opportunity to conduct discovery, [the petitioner] will have the opportunity to seek a summary judgment on the ground that she is entitled to State-agent immunity."
Department of Mental Health, 837 So.2d at 813-14.
As discussed below, some of Arnold's claims in the instant case, like the claims brought against the commissioner in her individual capacity in Department of Mental Health, are "fact intensive." Only limited discovery was conducted in the action originally filed by Arnold, and no discovery has been conducted in this case because the petitioners have not responded to Arnold's discovery requests. As to Arnold's claims that are "fact intensive," the petition for the writ of mandamus is premature. It is possible that after discovery Arnold could present sufficient evidence to overcome a summary-judgment motion as to these claims.
Further, in Ex parte Butts, 775 So.2d 173, 176 (Ala.2000), the defendants petitioned this Court for a writ of mandamus directing the trial court to dismiss the claims against them on the grounds of State-agent immunity. This Court held that
"`[i]t is not for this court to determine, based on the complaint, whether the plaintiff will ultimately prevail, but only if he may possibly prevail.' . . . It is conceivable that [the plaintiffs] could prove facts that would show that [the *902 defendants] failed to discharge duties pursuant to a checklist or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law."
775 So.2d at 178 (quoting Patton v. Black, 646 So.2d 8, 10 (Ala.1994)). See also Newman v. Bridgestone/Firestone N. Americantire, LLC, 274 F.Supp.2d 1289, 1291 (S.D.Ala.2003) ("In the earlier Butts case, the Alabama Supreme Court made it abundantly clear that such issues as State-agent immunity could only be decided after the parties were given an opportunity to conduct discovery and presented same in a motion for summary judgment."); and Ryan v. Hayes, 831 So.2d 21, 32 (Ala.2002) ("[B]ut where issues of fact unresolved at the trial level preclude recognition of the [immunity] defense at that stage, we have emphasized the possibility of a later-stage interim review. In that regard we have explained that once the parties have had the opportunity to conduct discovery, the defendants would have the opportunity to seek a summary judgment on the ground that they were entitled to State-agent immunity. . . .").
In Ex parte Alabama Department of Forensic Sciences, 709 So.2d 455 (Ala. 1998), the plaintiff sued the Alabama Department of Forensic Sciences and the State medical examiner. The defendants filed a motion to dismiss arguing that they were entitled to sovereign and qualified immunity. The defendants also moved to stay discovery pending the trial court's ruling on the motion to dismiss. The trial court denied both of the defendants' motions. The defendants again moved to dismiss the claims against them and moved for a stay of discovery pending a ruling on the second motion to dismiss. The trial court denied the motion to stay discovery, but the court had not yet ruled on the second motion to dismiss when the defendants filed a petition for a writ of mandamus with the Court of Civil Appeals. The defendants asked the Court of Civil Appeals to direct the trial court to grant their motion to dismiss. The Court of Civil Appeals denied the writ, and the defendants petitioned this Court for a writ of mandamus.
This Court granted the petition for the writ of mandamus directing the trial court to dismiss the claims against the defendants based on sovereign and qualified immunity. The Court's grant of the writ in Department of Forensic Sciences was not premature because the determination whether the defendants had immunity was purely a question of law. Department of Forensic Sciences, 709 So.2d at 457. Under the Alabama Constitution, the State and its departments are immune from suit. Ala. Const. 1901, § 14. Therefore, the claims against the State or against the Department of Forensic Sciences were due to be dismissed without any factual inquiry into the alleged wrongful conduct. In addition, the Court held that the State medical examiner was entitled to qualified immunity or "substantive immunity." Department of Forensic Sciences, 709 So.2d at 458. The Court held that the medical examiner was entitled to qualified immunity if his actions were discretionary rather than ministerial.[4]Department of Forensic Sciences, 709 So.2d at 458. The Court stated that, "[w]hether a state employee's action was discretionary or merely ministerial is a question of law to be decided by the trial court." 709 So.2d at 458. Therefore, although no discovery had taken place and although the trial court had not yet ruled on the defendants' second motion to dismiss, the writ was not premature in *903 Department of Forensic Sciences because the issue whether the claims should be dismissed on the basis that the defendants were immune from suit was purely a question of law rather than fact. 709 So.2d at 458.
Like the claims in Department of Forensic Sciences, some of Arnold's claims also involve questions of law, rather than questions of fact. As to these claims, the petition for the writ of mandamus is not premature. Because these claims involve questions of law, further discovery would be unnecessary to resolve these claims. However, some of Arnold's other claims in this case turn on factual determinations. As to those claims that are "fact intensive," the petition for the writ of mandamus must be denied as premature.

State-agent Immunity and the Cranman Restatement

In Ex parte Cranman, 792 So.2d 392 (Ala.2000), this Court set out a new test for determining when a State employee is entitled to State-agent immunity:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405. Although Cranman was a plurality decision, the test for determining State-agent immunity as restated in Cranman was adopted by this Court in Butts, 775 So.2d at 177-78 ("We today adopt this new test suggested in Cranman.").

A. John Moon and Theodore Moon
Under Alabama law, "[e]very peace officer. . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala.Code 1975, § 6-5-338(a). *904 Before the adoption of the test enumerated in Cranman, this Court determined whether a peace officer was entitled to immunity under § 6-5-338(a) by examining whether the officer was engaged in a "discretionary function." Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala.1998); Ex parte City of Montgomery, 758 So.2d 565, 569-70 (Ala.1999); Williams v. Crook, 741 So.2d 1074, 1076 (Ala.1999); and Montgomery v. City of Montgomery, 732 So.2d 305, 311 (Ala.Civ.App.1999). Discretionary acts are defined as "`those acts to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.' Wright v. Wynn, 682 So.2d 1, 2 (Ala.1996)." Ex parte City of Montgomery, 758 So.2d at 569. However, discretionary-function immunity under § 6-5-338(a) did not apply when "the officer's conduct was so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." Ex parte City of Gadsden, 781 So.2d 936, 938 (Ala.2000).
The restatement of State-agent immunity as set out in Cranman, 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a). Swan v. City of Hueytown, 920 So.2d 1075, 1078 (Ala. 2005); Hollis v. City of Brighton, 885 So.2d 135, 143 (Ala.2004) ("Whether a qualified peace officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by Ex parte Cranman . . . ."); and Howard v. City of Atmore, 887 So.2d 201, 203 (Ala.2003) ("Thus, we will address the applicability of peace-officer immunity under the principles set forth in Cranman."). "Since Cranman, we analyze [§ 6-5-338(a)] immunity issues in terms of `State-agent' immunity, rather than `under the dichotomy of ministerial versus discretionary functions.'" Howard, 887 So.2d at 203 (quoting Ex parte Hudson, 866 So.2d 1115, 1117 (Ala.2003)).
This Court has also addressed the difference between the language of § 6-5-338(a) and the language of Cranman describing the conduct for which immunity is available. Section 6-5-338(a) states that an officer is immune from "tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties" (emphasis added). In contrast, category (4) of the Cranman standard refers to "exercising judgment in the enforcement of the criminal laws of the State" (emphasis added). The Court has addressed this difference and stated:
"We notice a difference between certain critical language in the statute, § 6-5-338(a), and certain critical language in the Cranman restatement describing the conduct immunized. That is, the statute refers to `conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties' while immune category (4) of the Cranman restatement refers to conduct `exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons.'"
Hollis, 885 So.2d at 143-44. The Court had the opportunity to reconcile this conflict in Swan. In Swan, we stated that "[i]mmunity from tort liability must arise out of the peace officer's performance of `any discretionary function within the line or scope of his or her' law-enforcement duties." 920 So.2d at 1078 (quoting § 6-5-338(a), Ala.Code 1975). The Court then set out the Cranman standard and explained that since the Cranman test was adopted we analyze immunity issues under § 6-5-338(a) in terms of "the principles *905 set forth in Cranman." Swan, 920 So.2d at 1078. Explaining the Cranman standard, the Court stated: "Thus, the Cranman standard answers in the affirmative the question whether arresting a person is an exercise of judgmenta `discretionary function'and therefore clothes the officer in State-agent immunity." 920 So.2d at 1079. Therefore, conduct involving the "exercise of judgment in the enforcement of criminal laws" under the Cranman standard is also a "discretionary function" under § 6-5-338(a), Ala.Code 1975. Swan, 920 So.2d at 1082.
We also note that even before the Cranman standard was adopted, this Court defined a "discretionary function" as an act that "requir[es] exercise in judgment." Ex parte City of Montgomery, 758 So.2d at 569. Category (4) of the Cranman standard lists one type of function that is "discretionary" within the meaning of § 6-5-338(a)arresting or attempting to arrest a person. In our analysis of peace-officer immunity under § 6-5-338(a), we must keep in mind that the Cranman standard is "a restatement of the law of immunity, not a statute." Howard, 887 So.2d at 206. In addition, the Cranman standard "states categories, but does not purport to set forth an exhaustive list of activities falling within each category." Howard, 887 So.2d at 206.

1. Claims based upon carelessness, negligence, and unskillfulness
In Swan, a police officer for the City of Hueytown stopped a vehicle in which the plaintiff, Michael Swan, was a passenger. During the stop, the officer radioed a police dispatcher and asked the dispatcher to check the National Crime Information Center database to determine whether the driver or Swan had any outstanding warrants. The dispatcher informed the officer that the City of Birmingham had a possible outstanding warrant on Swan. The officer then instructed the dispatcher to contact the City of Birmingham to confirm the existence of the warrant. The officer was informed by the dispatcher that the City of Birmingham had confirmed the existence of two outstanding warrants for Swan's arrest. The evidence later indicated that the outstanding warrants were for a "Michael Swann" rather than the plaintiff, "Michael Swan." Swan was arrested, and when it was determined that he had no outstanding warrants for his arrest, he was released.
Swan sued the City of Hueytown claiming that he had suffered harm as a result of the officer's failure to determine his true identity. The City of Hueytown argued that it was entitled to immunity under § 6-5-338. In affirming the summary judgment for the City of Hueytown, this Court held that under both § 6-5-338 and the standard set out in Cranman, the officer was engaged in a "discretionary function" requiring an "exercise in judgment" when he arrested Swan and, therefore, was entitled to immunity. Swan, 920 So.2d at 1079. The Court also held that "arrests and attempted arrests are generally classified as actions requiring an officer to exercise judgment." Swan, 920 So.2d at 1079.
Arnold alleges that she was falsely imprisoned and falsely arrested as the result of the negligence, carelessness, and unskillfulness of John Moon and Theodore Moon. The petitioners, on the other hand, argue that John Moon and Theodore Moon are entitled to immunity under 6-5-338(a).[5] The facts of this case are similar *906 to the facts of Swan. John Moon and Theodore Moon were "arresting or attempting to arrest" Arnold when they confirmed the existence of a warrant for her arrest. Therefore, under Cranman and Swan, this action is a discretionary function involving the exercise of judgment. See Swan, 920 So.2d at 1079 ("Thus, the Cranman standard answers in the affirmative the question whether arresting a person is an exercise of judgmenta `discretionary function'and therefore clothes the officer in State-agent immunity."). Once the existence of the outstanding warrant was confirmed, based on the information provided by Theodore Moon John Moon decided to pick up a copy of the warrant and to arrest Arnold. Under Swan, the arrest involved an exercise of judgment within the meaning of the Cranman test. Swan, 920 So.2d at 1079. Therefore, John Moon and Theodore Moon are entitled to immunity because they were engaged in an "arrest or attempted arrest," which is a discretionary function requiring the exercise of judgment. See City of Birmingham v. Sutherland, 834 So.2d 755, 762 (Ala.2002) ("Allegations of negligence are not sufficient to remove the immunity the City is provided for [an officer's] performance of a discretionary function.") (citing Ex parte City of Montgomery, 758 So.2d at 570). Therefore, as to the claims alleging negligence, carelessness, and unskillfulness that were brought against John Moon and Theodore Moon, we grant the petition for the writ of mandamus and order the trial court to stay discovery and direct the trial court to conduct a hearing on the summary-judgment motion as to the claims against them based on carelessness, negligence, and unskillfulness.[6]

2. Claims based upon bad faith, malice, or willfulness
Peace officers are not entitled to absolute immunity under § 6-5-338(a); rather, immunity from tort liability under § 6-5-338(a) "is withheld if an officer acts with willful or malicious intent or in bad faith." Borders v. City of Huntsville, 875 So.2d 1168, 1178 (Ala.2003). See also *907 Gary v. Crouch, 867 So.2d 310, 313 (Ala. 2003) ("[W]here a municipal police officer is engaged in a discretionary function with respect to the conduct complained of, he or she would be immune under § 6-5-338, `unless his [or her] actions were conducted with willful or malicious intent or in bad faith.'") (quoting Ex parte City of Montgomery, 758 So.2d at 570). Cf. Cranman, 792 So.2d at 405 (holding that a State agent is not entitled to immunity "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law").
Arnold alleges that John Moon and Theodore Moon acted in bad faith in arresting her in that they may have "fabricated" or "concocted" the warrant after she was arrested. The petitioners argue that John Moon and Theodore Moon are immune from liability as to this claim under § 6-5-338(a). If John Moon and Theodore Moon acted in bad faith, with malice, or with willfulness in arresting Arnold, however, they are not entitled to immunity under § 6-5-338(a). See Borders, 875 So.2d at 1178. Cf. Swan, 920 So.2d at 1081 (holding that a municipal police officer was entitled to immunity under § 6-5-338(a) although he arrested the wrong person, because the plaintiff did not allege that his arrest was made in bad faith, with malice, or willfully).
John Moon stated that Arnold was present at the municipal court complex when the employee in the clerk's office notified him that there was an outstanding warrant for Arnold's arrest. In contrast, Arnold claims John Moon could not have verified the existence of the warrant as he claimed he did in his affidavit because she was arrested immediately upon entering the foyer of the municipal court complex. Arnold also alleges that John Moon refused to let her see the warrant when he arrested her. In addition, Arnold alleges that after she was released from jail she returned to the municipal court complex to obtain a copy. However, Arnold states that no one in the municipal court clerk's office could provide her with a copy. Arnold further states that she did not actually receive a copy of the warrant until after she filed her initial complaint in the state court.
Lastly, Arnold alleges that her arrest may have been made in bad faith or that the warrant may have been "fabricated" or "concocted" by John Moon or Theodore Moon because of a previous dispute Arnold had had with Theodore Moon. In 1996, Arnold's granddaughter was severely injured and suffered permanent brain damage while she was in the care of a babysitter, and Theodore Moon was assigned to investigate the case. No arrests were made, and Arnold believed that Theodore Moon had failed to properly investigate the cause of her granddaughter's injuries. Arnold complained to the district attorney and the attorney general's office about Theodore Moon's work on the case. Therefore, Arnold alleges, her arrest may have been made in bad faith by Theodore Moon because of their previous dispute.
The petitioners have no clear legal right to the order sought as to Arnold's claims that John Moon and Theodore Moon acted with malice and bad faith in arresting her because it is possible that Arnold could prove facts showing that the officers are not entitled to immunity. See Butts, 775 So.2d at 178 ("`[i]t is not for this court to determine, based on the complaint, whether the plaintiff will ultimately prevail, but only if he may possibly prevail.' . . . It is conceivable that [the plaintiffs] could prove facts that would show that [the petitioners]. . . acted willfully, maliciously, fraudulently, [or] in bad faith . . . .") (quoting Patton v. Black, 646 So.2d 8, 10 (Ala.1994)). See *908 also Burdeshaw v. Snell, 350 F.Supp.2d 944, 952-53 (M.D.Ala.2004) (holding that on the basis of the complaint "there isor can bea factual basis which divests [the defendant police officer] of his statutory immunity" because the officer arrested the plaintiff for possession of drugs but failed to investigate the plaintiff's claim that he had a valid prescription for the drugs); and Walker v. Briley, 140 F.Supp.2d 1249, 1263 (N.D.Ala.2001) (denying summary-judgment motion filed by a police officer who argued that he was immune under § 6-5-338(a) from a claim of false arrest because the evidence suggested that the officer "had no grounds to believe [the plaintiff] had committed any offense whatsoever" and a reasonable jury could determine that the arrest was in bad faith).
The determination whether John Moon and Theodore Moon are entitled to immunity as to Arnold's claim that the officers acted willfully, maliciously, or in bad faith is dependent upon the specific facts of this case. After discovery, the trial court can determine whether Arnold can produce sufficient evidence showing that the officers acted in bad faith, with malice, or willfully so that a summary judgment on the basis of immunity under § 6-5-338 should not be entered. See Department of Mental Health, 837 So.2d at 814 ("After the parties have had the opportunity to conduct discovery, [the petitioner] will have the opportunity to seek a summary judgment on the ground that she is entitled to State-agent immunity."). Because there is no clear legal right to an order directing the trial court to stay discovery and conduct a hearing on the summary-judgment motion as to the claim that John Moon and Theodore Moon acted in bad faith or with malice when they arrested Arnold, the petition for the writ of mandamus is due to be denied as to this claim.

B. Willie Dean Ware and Adrienne Baker
Clerks of court and magistrates like Ware and Baker are afforded judicial immunity for their "discretionary judicial acts." City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1133 (Ala.2000) (citing Almon v. Gibbs, 545 So.2d 18, 20 (Ala.1989)). Judicial-immunity cases decided both before and after the Cranman restatement was adopted provide guidance in this case.
Before the adoption of the Cranman restatement, this Court determined whether clerks and magistrates were entitled to judicial immunity by first analyzing whether the clerk or magistrate was acting within his or her official capacity, and secondly, whether the act was discretionary or administrative in nature. Almon, 545 So.2d at 20. In Almon, a district court clerk was sued for failing to issue a warrant. The clerk decided not to issue the warrant after determining that there was a lack of probable cause for arrest. This Court has held that
"where a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk to judicial immunity. This absolute immunity for acts within the jurisdiction of the judicial officer is extended even where the officer acts in error, maliciously, or in excess of his authority."
545 So.2d at 20. We held that the court clerk was entitled to immunity because the determination whether probable cause to issue a warrant existed involved an exercise of discretion. Almon, 545 So.2d at 20.
Since the adoption of the Cranman restatement, this Court analyzes whether a magistrate or court clerk is entitled to judicial immunity for official acts by determining whether the magistrate or clerk *909 "was required to `exercise judgment' in the execution of the task." Bayou La Batre, 785 So.2d at 1133 (quoting Cranman, 792 So.2d at 405). In Bayou La Batre, a city court magistrate attempted to fax a warrant-recall order to the city police department. The magistrate placed the recall order "upside down in the fax machine so that she in fact transmitted the back of the ordera blank pagerather than the recall order itself." Bayou La Batre, 785 So.2d at 1130. The police never received the recall order, and the plaintiff was arrested because the police believed that there was an outstanding warrant for the plaintiff's arrest.
The plaintiff sued the City of Bayou La Batre, alleging false arrest and false imprisonment. The city argued that because the magistrate enjoyed judicial immunity the city was also immune from liability as to claims based on the magistrate's conduct. This Court held that magistrates and clerks are officials "with a blend of judicial and administrative duties" and that, under Cranman, they are entitled to judicial immunity when they are "required to `exercise judgment' in the execution of a task." Bayou La Batre, 785 So.2d at 1133 (citing Cranman, 792 So.2d at 405). We held that, under the Cranman restatement, the magistrate was not entitled to judicial immunity because she was performing "an administrative duty that did not involve the exercise of judgment" when she faxed the warrant-recall order to the police department. Bayou La Batre, 785 So.2d at 1133. In addition, this Court distinguished the acts of the court magistrate in faxing the warrant-recall order upside down from the acts of the court clerk in Almon. We stated:
"This Court held [in Almon] that the determination of whether probable cause existed to issue a warrant is a judicial act, an act that properly affords judicial immunity. [545 So.2d at 20.] The situation with which we are confronted today is whether a magistrate should be protected by judicial immunity for failure to recall a warrant."
Bayou La Batre, 785 So.2d at 1133.
The petitioners argue that their petition is due to be granted because, they say, Ware and Baker have judicial immunity.[7] Baker, in her affidavit, stated that Ware instructed her to "clean up any pending or unresolved files." In doing so, Baker apparently made an error in issuing the capias warrant for Arnold's arrest for failure to appear. Under the holding in Bayou La Batre, the Cranman test is applied to determine whether Baker and Ware are entitled to judicial immunity. 785 So.2d at 1133. The petitioners state that Baker and Ware's decision to issue the warrant for Arnold's arrest "required the exercise of judgment and discretion in issuing a warrant to resolve a pending file."
Despite this argument, the evidence before us does not indicate what steps Baker and Ware took before issuing the warrant for Arnold's arrest. Baker's and Ware's affidavits do not describe how they made the decisions to "clean up" the court files and to issue the warrant for Arnold's arrest. At this point in the proceeding, it is unclear whether Ware's instruction to "clean up" the files and Baker's actions in "cleaning up the files" were discretionary-type actions that involved the "exercise of judgment" required for immunity under *910 Cranman.[8] We are unable to determine whether Baker's and Ware's actions are like the administrative act of the magistrate in Bayou La Batre, 785 So.2d at 1129 (faxing the warrant-recall order upside down) or the discretionary-type action of the court clerk in Almon, 545 So.2d at 20 (determining whether probable cause existed to issue a warrant). Therefore, at this point in the proceeding, Baker and Ware have not established a clear legal right to an order directing the trial court to stay discovery and conduct a hearing on the summary-judgment motion on the basis of judicial immunity.

C. City of Tuskegee
Arnold alleges that the City of Tuskegee is vicariously liable for the negligence, carelessness, and unskillfulness of John Moon and Theodore Moon. The petitioners argue that because the officers are immune from liability under § 6-5-338(a) the City is immune from liability under § 6-5-338(b). Section § 6-5-338(b) provides:
"This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours."
"It is well established that, if a municipal police officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." Howard, 887 So.2d at 211. Because we have held that John Moon and Theodore Moon are immune from Arnold's claim alleging negligence, unskillfulness, or carelessness, the City is also immune from liability as to this claim by virtue of § 6-5-338(b). Therefore, the petition for a writ of mandamus ordering the trial court to stay discovery is due to be granted as to the claims against the City based upon the negligence, carelessness, and unskillfulness of John Moon and Theodore Moon, and we direct the trial court to conduct a hearing on the City's motion for a summary judgment as to these claims.
Arnold also claims that the City of Tuskegee is vicariously liable for the bad faith of John Moon and Theodore Moon in allegedly "concocting" the warrant. The City argues that it is immune from liability as to these claims under Ala.Code 1975, § 11-47-190. Section 11-47-190 provides that a municipality is immune from tort liability "unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." This statute limits a municipality's liability for the acts of its agents to those acts that are negligent, careless, or unskillful. Section 11-47-190 provides a municipality immunity from liability for the acts of its agents that are carried out in bad faith or with malice. Borders, 875 So.2d at 1183 (quoting Ex parte City of Gadsden, 718 So.2d 716, 721 (Ala.1998)). The City has a clear legal right to an order directing the trial court to stay discovery as to Arnold's claims that are based upon the intentional conduct of John Moon and Theodore Moon because a municipality cannot be held liable for the intentional torts of its agents. Therefore, we grant the petition for the writ of mandamus ordering the trial court to stay discovery as to the claims based upon the bad faith or malicious acts of John Moon and Theodore Moon, and we direct the *911 trial court to hold a hearing on the City's motion for a summary judgment as to these claims.
Arnold also alleges that the City of Tuskegee is vicariously liable for the actions of Baker and Ware. Because we have held that, at this point in the proceeding, Baker and Ware were not entitled to judicial immunity as to Arnold's claims of negligence, unskillfulness, or carelessness against them, Arnold has stated a cause of action against the City of Tuskegee under § 11-47-190. See Franklin, 670 So.2d at 852 ("[W]here a plaintiff alleges a factual pattern that demonstrates `neglect, carelessness, or unskillfulness' the plaintiff has stated a cause of action under Ala.Code 1975, § 11-47-190."). The City of Tuskegee does not have a clear legal right to an order instructing the trial court to stay discovery and conduct a hearing on the summary-judgment motion as to this claim because it is possible that Arnold could discover facts demonstrating that Baker and Ware are not immune from liability by virtue of judicial immunity. Accordingly, we deny the petition for the writ of mandamus as to this claim.
The City of Tuskegee does have a clear legal right to an order directing the trial court to stay discovery and conduct a hearing on the motion for a summary judgment as to the claim that it is vicariously liable for the acts of Baker and Ware that were allegedly carried out with bad faith or malice. As stated earlier in this opinion, under § 11-47-190, a municipality is immune from liability for the intentional torts of its agents. Borders, 875 So.2d at 1183 (quoting City of Gadsden, 718 So.2d at 721). The City cannot be held liable for any intentional torts on the part of Baker and Ware. Therefore, the City's petition for a writ of mandamus directing the trial court to stay discovery as to the claim that it is vicariously liable for the alleged intentional torts of Baker and Ware is due to be granted, and we direct the trial court to conduct a hearing on the summary-judgment motion as to this claim.

Conclusion
Theodore Moon and John Moon have demonstrated a clear legal right to an order directing the trial court to stay discovery as to the claims alleging that they acted with negligence, carelessness, or unskillfulness. Accordingly, we direct the trial court to grant the petitioner's motion to stay discovery, and we direct the trial court to conduct a hearing on the motion for a summary judgment as to these claims. However, at this stage in the proceedings, Theodore Moon and John Moon have not demonstrated a clear legal right to an order directing the trial court to stay discovery and conduct a hearing on the summary-judgment motion as to Arnold's claims alleging that they acted with bad faith, malice, or willfulness. Therefore, we deny the petition for a writ of mandamus as to these claims.
At this stage in the proceedings, Baker and Ware have not demonstrated a clear legal right to an order directing the trial court to stay discovery and conduct a hearing on the motion for a summary judgment as to any of the claims brought against them. Accordingly, we deny the petition for a writ of mandamus as to the claims brought against Baker and Ware.
The City of Tuskegee has demonstrated a clear legal right to an order directing the trial court to stay discovery as to the claims alleging that they are vicariously liable for the intentional torts of the individual defendants (Theodore Moon, John Moon, Baker, and Ware). Therefore, we grant the petition for a writ of mandamus directing the trial court to stay discovery, and we direct the trial court to conduct a hearing on the summary-judgment motion *912 as to these claims. In addition, the City has also demonstrated a clear legal right to an order directing the trial court to stay discovery as to the claim that it is vicariously liable for the alleged negligent actions of Theodore Moon and John Moon. The petition for a writ of mandamus ordering the trial court to stay discovery is also granted as to this claim, and we direct the trial court to hold a hearing on the summary-judgment motion as to this claim. However, at this stage in the proceeding, the City has not demonstrated a clear legal right to an order directing the trial court to stay discovery and conduct a hearing on the motion for summary judgment as to the claim that it is vicariously liable for the alleged negligent acts of Baker and Ware. Accordingly, we deny the petition for the writ of mandamus as to this claim.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
SEE, LYONS, HARWOOD, BOLIN, and PARKER, JJ., concur.
STUART, J., concurs in the result.
NABERS, C.J., and WOODALL, J., concur in the result in part and dissent in part.
WOODALL, Justice (concurring in the result in part and dissenting in part).
The trial court properly concluded that discovery was necessary before the pending summary-judgment motion could be adequately addressed. I am aware of no authority requiring the trial court to consider such a motion on a piecemeal basis. Therefore, to the extent this Court grants the petition, I respectfully dissent. Otherwise, I concur in the result.
NABERS, C.J., concurs.
NOTES
[1] This case was originally assigned to another Justice; it was reassigned to Justice Smith.
[2] 42 U.S.C. § 1983 (1996).
[3] Alabama Const. 1901, § 14, states: "That the State of Alabama shall never be made a defendant in any court of law or equity." Although the petitioners in this case argue that they are entitled to absolute immunity under this provision, this argument is without merit. Absolute immunity does not extend to municipalities or its agents. See Norris v. City of Montgomery, 821 So.2d 149, 152-53 (Ala. 2001) (holding that absolute immunity does not extend to municipalities); Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala. 2000) ("This absolute immunity extends to arms or agencies of the state . . . but generally does not extend . . . to municipalities or municipal agencies . . . ."); and Jackson v. City of Florence, 294 Ala. 592, 600, 320 So.2d 68, 75 (1975).
[4] This Court no longer applies the discretionary/ministerial function dichotomy in determining immunity. See Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000).
[5] The petitioners actually argue that all the petitioners are entitled to immunity under § 6-5-338. However, because § 6-5-338 provides immunity to "peace officers," the immunity offered by that Code section is available to John Moon and Theodore Moon. Petitioners Ware and Baker are not entitled to immunity under § 6-5-338 because there is no argument or evidence before us to indicate that they are "peace officers" as contemplated by the statute.
[6] However, we note that an officer is not entitled to absolute immunity when he or she is engaged in an "arrest or an attempted arrest." For example, if an officer is engaged in an arrest but he or she "fail[s] to discharge [the arrest] pursuant to detailed rules or regulations, such as those stated on a checklist," then the officer is not entitled to immunity. Butts, 775 So.2d at 178. Cf. Howard, 887 So.2d at 209 (holding that although an officer was required to exercise judgment in determining whether an inmate was at risk for suicide, the officer was not entitled to immunity under § 6-5-338(a) because the officer failed to follow the mandatory rules and procedures requiring the officer to check on inmates twice per hour). However, in the case at bar, Arnold has not alleged that when she was arrested John Moon or Theodore Moon "failed to discharge duties pursuant to detailed rules or regulations."

Secondly, an officer will not be entitled to immunity under § 6-5-338(a) and the standard set out in Cranman if he or she carries out an arrest or attempted arrest that is "beyond his [or her] authority." Butts, 775 So.2d at 178. See also Moore v. Crocker, 852 So.2d 89, 92 (Ala.2003) (holding that an officer was not entitled to immunity under § 6-5-338(a) because the officer exceeded his authority when he made a warrantless arrest outside the county in which he was employed). In this case, Arnold does not allege that John Moon or Theodore Moon exceeded their authority when she was arrested. Although Arnold alleges that John Moon and Theodore Moon were negligent, there is no allegation that their conduct leading to her arrest and the arrest itself falls outside the scope of an action that involves the exercise of discretion or an exercise in judgment.
[7] Judicial immunity could apply only to the acts of Ware, the municipal court magistrate, and Baker, the clerk of the municipal court. See Bayou La Batre, 785 So.2d at 1133 ("This Court has extended the principle of judicial immunity to the discretionary judicial acts of magistrates and clerks of court.").
[8] It is unclear how Ware could have been negligent in simply instructing Baker to "clean up" the court files. However, Arnold alleges that Baker and Ware acted together to issue the warrant for her arrest, and the petitioners do not dispute this allegation.