BOLIN, Justice.
Mary S. Downing, individually and as administratrix of the estate of Larry Downing, deceased, appeals from a summary judgment in favor of the City of Dothan. We affirm.

Facts

On January 13, 2007, Mary and her husband, Larry, arrived at the Southern Family Market to shop for groceries. After placing the groceries in their automobile, Larry was returning the shopping cart to the store when he was struck and killed by an automobile driven by Tabitha Shea Farmer. Farmer had apparently temporarily lost consciousness as the result of inhaling the fumes from an aerosol can of 3M brand dust remover, a computer-cleaning product.
Shortly before the accident, Farmer had been stopped by Dothan City police officers for erratic driving. Farmer testified that, while sitting at a red light, she inhaled fumes from the can of dust remover and lost consciousness. She said that her vehicle then rolled through the red light and over a curb and collided with a city *17 park bench. After regaining consciousness, Farmer said she drove off. Wanda Andrews, an off-duty dispatcher for the City of Dothan, witnessed the series of events and immediately reported them to the Dothan Police Department. Andrews followed Farmer to a nearby parking lot, where Farmer got out of her vehicle to inspect the damage caused by the impact with the bench. Andrews questioned Farmer regarding the accident and noted that she seemed disoriented. Farmer drove off, and Andrews continued to follow her, noting her erratic driving. At approximately 5:54 p.m., Officer Raemonica Carney, who was nearing the end of her shift, heard the dispatch and responded to the call, initiating a traffic stop. Cpl. Clark Rice and Officer Darren Pert, the two officers dispatched to the call, arrived immediately thereafter. Also present at the scene were Cpl. Tim Miller, who worked in the vice-narcotics division, and Andrews, the off-duty dispatcher for the City. Andrews talked to Officer Carney and told her that she believed that Farmer was impaired. Andrews also talked to Cpl. Rice and described everything that she had witnessed: Farmer’s car rolling through the red light and striking a park bench; Farmer making a U-turn; Farmer staggering, slurring her speech, being unable to intelligently answer simple questions, driving off again, stopping in the middle of Main Street, and jumping the curb. Upon questioning by Cpl. Rice about her erratic driving, Farmer replied that she did not recall doing anything wrong. Cpl. Rice continued to question Farmer, asking if she had any medical problems that could have affected her driving or if she had possibly been attending to her two-year-old child, who was in the backseat; Farmer responded “no.” With Farmer’s permission, Officers Carney and Pert searched Farmer’s vehicle while Cpl. Rice questioned a second witness. Officer Carney found a can of dust remover without a cap in the floorboard area of the driver’s side of the vehicle. She discovered on the passenger’s side floorboard a plastic shopping bag containing, among other things, a second can of dust remover, along with the cap from the first can. Officer Carney asked Farmer if she had been driving around “huffing” the dust remover and Farmer replied, “I don’t do that.” Officer Carney showed the cans of dust remover to Cpl. Rice; Farmer again denied having inhaled the dust remover. Officer Carney used a flashlight to check Farmer’s eyes for responsiveness to stimuli. According to Officer Carney, Farmer’s eyes did not dilate or otherwise respond to the light. Officer Carney expressed her opinion to Cpl. Rice that Farmer had been driving around while inhaling the dust remover and that she should be arrested for driving while intoxicated. Cpl. Rice had Farmer submit to a series of field-sobriety tests. According to Cpl. Rice, Farmer performed all the tests successfully and she seemed alert, aware, and fully functional. Officer Pert, Lt. Ray Wood-ham, and Andrews witnessed Cpl. Rice administering the field-sobriety tests and agreed that Farmer had performed them successfully. Officer Carney, however, disputes that Farmer passed all the tests successfully. Cpl. Rice eventually approached Officer Carney (because her shift had ended) and told her that she could go and that “they would handle the call.” Thereafter, Cpl. Rice and Officer Pert made the decision to not arrest Farmer based on their opinion that she was not impaired or under the influence of any substance that would preclude her from safely operating her vehicle. Cpl. Rice testified in his affidavit as follows:
“Ms. Farmer recited her ABC’s without difficulty. She performed the 1, 2, 3, 4 finger count twice correctly. She *18 counted from 100 backwards to 93 as instructed with no hesitations or mistakes. She performed the one-legged stand and passed. She knew the date when I asked her today’s date. She was incorrect when I asked her what time it was. She stated 7:30 when it was 6:00 p.m. Ms. Farmer’s eyes were not red, she was steady on her feet and did not stagger. Her speech was not slurred nor did she ever act overly excited or agitated. She had no detectable odor of alcohol on her breath, her person or inside her vehicle. A search of her vehicle revealed no alcoholic beverages, prescription narcotics or drug paraphernalia.
“Ms. Farmer seemed alert, aware and fully functional during the time I was with her at the scene of the traffic stop. She never mentioned any medical conditions and ... did not appear to have any. I have had the opportunity during my career as a police officer to witness many intoxicated persons and I have made many arrests for public intoxication and [driving under the influence] which have resulted in convictions. Based upon my experience and my observations of Ms. Farmer, it was then and remains my opinion she was not under the influence of any substance such that her ability to safely operate a motor vehicle was compromised. A traffic incident report was made and Officer Pert released Ms. Farmer.”
As previously noted, after being released, Farmer proceeded to the parking lot of the Southern Family Market grocery store where she inhaled dust remover and lost consciousness while she was driving, causing her vehicle to strike and kill Larry Downing.
Mary Downing, individually and as ad-ministratrix of her deceased husband’s estate, filed a wrongful-death action against the City of Dothan and fictitiously named parties, alleging negligence and wantonness.[1] The City of Dothan filed a motion for a summary judgment, arguing that it was entitled to State-agent immunity as governed by the analysis set forth in Ex parte Cranman, 792 So.2d 392 (Ala.2000). Downing responded by citing the following three cases: Luker v. City of Brantley, 520 So.2d 517 (Ala.1987), Tyler v. City of Enterprise, 577 So.2d 876 (Ala.1991), and Nunnelee v. City of Decatur, 643 So.2d 543 (Ala.1993).
“Luker stands for the proposition that once a police officer, acting in the line and scope of his duty, knows that a driver is intoxicated, he has a duty to restrain him, and if he does not restrain him and a third party is injured by the intoxicated driver, the city may be liable for the negligence of the officer in allowing the intoxicated driver to proceed.”
Tyler, 577 So.2d at 877.
Specifically, relying on the Luker principle, Downing argued that the City of Dothan was not entitled to State-agent immunity because, she says, its police officers had a duty to restrain Farmer from driving once they knew or reasonably should have known that she was intoxicated.[2] Af *19 ter conducting two separate hearings, the trial court ultimately concluded that the cases relied on and cited by Downing predated the effective date of § 6-5-338, Ala. Code 1975 (April 26, 1994), which provides that “[e]very peace officer ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.” The trial court further concluded that Downing failed to produce any evidence indicating that the police officers had acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law in not preventing Farmer from driving. Downing appeals.

Standard of Review and Applicable Law

The restatement of State-agent immunity as set out by this Court in Ex parte Cranman now governs the determination of whether a police officer is entitled to immunity under § 6-5-338(a), Ala.Code 1975. See Ex parte City of Tuskegee, 932 So.2d 895, 904 (Ala.2005) (“The restatement of State-agent immunity as set out in Cranman ... now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a).”). .In Cranman, this Court stated:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
(‘(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law enforcement officers’ arresting or attempting to arrest persons[, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975].
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
792 So.2d at 405 (some emphasis original; some emphasis added; and bracketed *20 modification added by Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala.2006)).
In determining whether State-agent immunity applies under Cranman, this Court has established a “burden-shifting” process. Ex parte Wood, 852 So.2d 705 (Ala.2002). In order to claim State-agent immunity, the City of Dothan bears the initial burden of demonstrating that Downing’s claims against it arise from a function that would entitle it to immunity. Wood, 852 So.2d at 709; Ryan v. Hayes, 831 So.2d 21 (Ala.2002). If the City of Dothan makes such a showing, the burden then shifts to Downing to show that one of the two Cranman categories of exceptions to State-agent immunity is applicable. Ex parte Kennedy, 992 So.2d 1276 (Ala.2008).

Discussion

The City of Dothan argues that it is entitled to State-agent immunity because, it says, its police officers were exercising a discretionary function in deciding whether to arrest Farmer for driving under the influence. There is no question that the City of Dothan met its burden because, on the day in question, its police officers were engaged in a law-enforcement function for which State-agent immunity would be available. Ala.Code 1975, § 6-5-338; Ex parte Cranman, supra; see also City of Birmingham v. Sutherland, 834 So.2d 755, 759 (Ala.2002) (“‘Generally, arrests and attempted arrests are classified as discretionary functions.’” (quoting Telfare v. City of Huntsville, 841 So.2d 1222, 1228 (Ala.2002))). Moreover, this Court has held that “[t]here is no hard and fast rule concerning when there is and when there is not probable cause to arrest a driver suspected to be under the influence of alcohol and/or drugs.” Ex parte City of Montgomery, 758 So.2d 565, 570 (Ala.1999) (abrogated on other grounds by Cranman, 792 So.2d at 404). Therefore, the burden shifted to Downing to present evidence that one of the two exceptions to State-agent immunity in Cranman is applicable. The exception being asserted by Downing is that the police officers acted beyond their authority in failing to restrain Farmer and otherwise allowing her to continue to operate her vehicle. “A State agent acts beyond authority and is therefore not immune when he or she ‘fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’ ” Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)). Downing has not alleged that the police officers violated any departmental rules or regulations in exercising their judgment in this case. Instead, relying on the Luker principle, she argues that immunity cannot be extended to the City when its police officers failed to restrain a driver they knew to be impaired. However, as previously stated, Ex parte Cranman now governs the determination of whether a police officer is entitled to immunity under § 6-5-338(a), Ala.Code 1975; § 6-5-338(a) was enacted subsequent to this Court’s decision in Luker. In any event, the evidence simply does not demonstrate that the police officers in this case acted beyond their authority in exercising their judgment to not arrest Farmer for driving under the influence. See, e.g., Nunnelee, supra (defendants entitled to immunity on a claim that they failed to arrest an intoxicated driver when driver passed field-sobriety test; driver had one unopened can of beer in vehicle; and driver did not appear intoxicated). In the instant case, although Officer Carney harbored the opinion that Farmer should have been arrested for driving under the influence, the record contains sufficient evidence to show that Cpl. Rice and Officer Pert had facts based on which they could have reasonably believed that Farmer was not impaired or otherwise incapable of operating her vehi- *21 ele. As previously stated, Cpl. Rice administered a series of field-sobriety tests. Cpl. Rice and Officer Pert testified in their affidavits that Farmer performed the tests successfully and that she did not appear impaired. Lt. Woodham also testified in an affidavit that he observed Farmer perform the field-sobriety tests and that she performed them successfully. Andrews also opined that Farmer passed all the tests that were administered. Downing has failed to carry her burden of showing that the police officers acted beyond their authority in exercising their discretion in enforcing the criminal laws of this State. Accordingly, the summary judgment in favor of the City of Dothan is due to be affirmed.
AFFIRMED.
COBB, C.J., and LYONS, STUART, SMITH, PARKER, and SHAW, JJ., concur.
WOODALL and MURDOCK, JJ., concur in the result.

. We note that Downing also named other defendants who are not parties to this appeal.

. We note that Downing sued only the City of Dothan and not the police officers involved in Farmer’s stop. " 'It is well established that, if a municipal police officer is immune pursuant to § 6-5-338(a), [Ala.Code 1975,] then, pursuant to § 6-5-338(b), the city of which he is employed is also immune.’” Ex parte City of Tuskegee, 932 So.2d 895, 910 (Ala.2005) (quoting Howard v. City of Atmore, 887 So.2d 201, 203 (Ala.2003)). Accordingly, because the liability of the City of Dothan in this case is contingent on the liability of its police officers, we will consider whether the police officers, as agents of the City, would be entitled *19 to immunity under the analysis stated in Cranman.