Rel: April 25, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2024-0547

_____

## Ex parte City of Montgomery and Shelton Davis

## PETITION FOR WRIT OF MANDAMUS

## (In re: Madilyn Shuford

## v.

## City of Montgomery and Shelton Davis)

## (Montgomery Circuit Court: CV-23-900862)

SHAW, Justice.

The City of Montgomery ("the City") and Montgomery Police Department Officer Shelton Davis ("Officer Davis") petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying their motion for a summary judgment and to enter an order granting that motion on the basis that they are entitled to immunity on the tort claims asserted against them by Madilyn Shuford. We grant the petition and issue the writ.

<u>Facts and Procedural History</u>

In December 2021, Officer Davis, while in his patrol car pursuing a fleeing suspect, collided with Shuford's vehicle at the intersection of East South Boulevard and Dorchester Drive in Montgomery. Officer Davis described, in his affidavit filed in the trial court, the relevant circumstances preceding that collision as follows:

> "… On December 16, 2021, I was working within the line and scope of my duties as a law enforcement officer.
>
> "… At approximately 8:04 a.m., I was patrolling the area of East South Boulevard near the intersection of Executive Park Drive.
>
> "… At this time and while stopped at the traffic light located at East South Boulevard and Executive Park Drive, a woman … attempted to get my attention by screaming for help.

"… [The woman] … proceeded to tell me that the man behind her was following her and trying to kill her.

"… I [told the woman] to pull over so that I can assist her and at this time I see a Nissan Maxima approaching … at a high rate of speed.

"… [The woman] identified the person in the Nissan Maxima as the person trying to kill her.

"… The person driving the Nissan Maxima, later identified as Eugene Osborne Jr., then notices [the woman] and I speaking [sic], runs the red light and makes an illegal u-turn.

"… I immediately activate my lights and sirens and begin pursuit of the suspect.

"… During pursuit, I heard a call come in via radio traffic that stated that Eugene Osborne Jr. had active warrants for robbery in the first degree and domestic violence assault in the third degree.

"… I pursued Osborne for approximately five miles throughout the city of Montgomery.

"… When I approached East South Blvd. and Dorchester Drive, the light for my direction of travel was red.

"… I slowed down in order to safely clear the intersection and noticed a Nissan Maxima, being driven by … Shuford, at a complete stop but partially in the intersection.

"… As I made my way at a reduced speed through the intersection, Shuford pulls out in front of me at an increasing rate of speed.

3

SC-2024-0547

"… Due to the distance between my vehicle, the vehicle being driven by Osborne, the vehicle being driven by Shuford, and the speed of all of the vehicles, there was nothing that I could have done to avoid a collision.

"… At the point of impact, the front of the police car I was driving made contact with the passenger side of Shuford's car."

Shuford later sued the City and Officer Davis. Shuford alleged that she was injured as a result of Officer Davis's negligent and/or wanton conduct. She further alleged that the City was vicariously liable for Officer Davis's conduct under the theory of respondeat superior.

Thereafter, the City and Officer Davis filed a joint motion for a summary judgment on Shuford's claims against them in which they argued, among other allegations, that, pursuant to § 6-5-338, Ala. Code 1975, and Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), Officer Davis was entitled to immunity and that his immunity extended to the City.[1] They attached, as evidence supporting their motion, various exhibits, including Officer Davis's affidavit testimony, which is quoted above, and a copy of video recordings from Officer Davis's body camera, which

---

[1]Although Cranman was a plurality decision, the restatement pertaining to State-agent immunity set forth in Cranman was subsequently adopted by this Court in Ex parte Rizk, 791 So. 2d 911 (Ala. 2000), and Ex parte Butts, 775 So. 2d 173 (Ala. 2000).

4

captured the events immediately preceding and during the accident. The accompanying audio on those recordings reflects that the siren in Officer Davis's patrol car was activated and clearly audible at all relevant times during the pursuit, which involved multiple officers, who also had lights and sirens activated as they proceeded through the intersection behind Officer Davis.

The City and Officer Davis also provided a copy of the Montgomery Police Department's "Written Directive" establishing its "guidelines for making decisions with regards to vehicular pursuit," which provided, in pertinent part, as follows:

> "Justification for engaging in a police vehicle pursuit must be limited to the facts known by the pursuing officer at the time a decision is made to engage in such pursuit. Information not established as fact at the time the pursuit is initiated, no matter how compelling cannot be considered later in determining whether the pursuit was justified. Police vehicle pursuits are only authorized in the following circumstances:
>
> "1.  To effect the arrest or to prevent the escape of a person(s) whom the officer reasonably believes has committed or is committing a felony involving the use, or threatened the use of a deadly weapon, or a violent felony against a person with serious bodily injury or death.
>
> "2.  When a suspect's actions prior to an attempt to stop him or her, involve such a flagrant

5

and dangerous behavior that they present an imminent threat of serious bodily injury or death.

"....

"Continuing pursuit requires justification based on potential threat to public and personal safety and/or seriousness of criminal activity. When involved in a pursuit, officers and supervisors must constantly consider the risks. Officers shall not needlessly endanger other persons. Some factors to be considered when deciding to initiate, continue or discontinue a pursuit are:

"1. Time of Day

"2. Volume of Vehicular/Pedestrian Traffic

"3. Location

"4. Weather conditions

"5. Road conditions

"6. Speeds involved

"7. Nature of charges

"8. Officer training and experience."

Also included as an exhibit was a copy of the Alabama Uniform Traffic Accident Report prepared at the scene ("the accident report"), which confirmed Officer Davis's assertion that, as he "was approaching the intersection … while in pursuit of a vehicle," he observed that "the

traffic light was red[,] so he slowed to clear the intersection," but Shuford "pulled out into his path[,] causing them to collide."[2]  The accident report further contained the following statement from Shuford:

> "[Shuford] stated that when her light turned green[,] she observed a vehicle speed through the intersection … and then she observed a marked police vehicle with lights activated approaching the intersection.  At that time[,] she stated that she attempted to accelerate across the intersection to get out of the way[;] however, her vehicle was struck on the passenger side by [the police vehicle]."

Shuford filed a response in opposition to the summary-judgment motion of the City and Officer Davis.[3]  In that response, she contended that there were remaining fact questions as to whether Officer Davis -- and, by extension, the City -- were entitled to immunity.  Specifically, Shuford asserted that Officer Davis was not "using acceptable audible and visual signals" during the pursuit, as generally required by § 32-5A-7, Ala. Code 1975.  Shuford's response referenced her affidavit testimony, which was purportedly attached to her response, reflecting her belief

---

[2]The video recordings from Officer Davis's body camera confirm that Shuford pulled directly into his path of travel.

[3]The materials before us do not indicate that Shuford objected to or moved to strike any of the exhibits included as support for the summary-judgment motion.

7

"that at the time of the accident, Officer Davis's lights and sirens were not activated." However, for all that appears, the referenced exhibit was omitted from Shuford's response. Shuford did submit her sworn interrogatory responses, which had been attached as an exhibit to the summary-judgment motion. Those responses alleged that traffic in the area was "heavy" on the morning of the accident and that Shuford "did not see any lights or hear any sirens" before the collision -- not that they were actually not in use -- and included no allegations as to Officer Davis's speed. Shuford further contended that Officer Davis was not entitled to immunity because, she argued, he "took an unreasonable risk in traveling at a high rate of speed" when, she said, "§ 32-5A-7 … does not give [an] officer discretion to grossly exceed the speed limit."

Without explaining the findings supporting its decision, the trial court denied the summary-judgment motion; the City and Officer Davis petitioned this Court for mandamus relief. We subsequently issued an order directing Shuford to answer the petition and submit a supporting

brief; no response was filed.[4]

## Standard of Review

"A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: '"(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."' Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)). The general rule is that the denial of a motion for a summary judgment is not reviewable; however, the denial of a summary-judgment motion grounded on immunity is reviewable by a petition for the writ of mandamus. Ex parte Blunt, 303 So. 3d 125 (Ala. 2019). This Court reviews a summary judgment de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Rule 56(c), Ala. R. Civ. P.; Nettles v. Pettway, 306 So. 3d 873 (Ala. 2020). The movant for a summary judgment has the initial burden of producing evidence indicating that there is no genuine issue of material

---

[4]

"Failure to respond to the allegations in a petition for a writ of mandamus compels this Court to consider those allegations to be true. … '[A]n answer in a mandamus proceeding is very important, as is evidenced by this Court's holding that uncontroverted averments of fact stated in an answer should be taken as true.' Ex parte Sharpe, 513 So. 2d 609, 610 (Ala. 1987). See also Ex parte Helbling, 278 Ala. 234, 177 So. 2d 454 (1965)."

Ex parte Swoope, 724 So. 2d 92, 93-94 (Ala. Crim. App. 1998).

fact and that the movant is entitled to a judgment as a matter of law. Id. Once the movant produces evidence establishing a right to a summary judgment, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. We view the evidence in a light most favorable to the nonmovant. Id."

Ex parte City of Vestavia Hills, 372 So. 3d 1143, 1146 (Ala. 2022).

## Discussion

The City and Officer Davis contend that the trial court erred in denying their motion seeking a summary judgment on Shuford's claims because, at the time of the collision, Officer Davis was acting within the line and scope of his employment as a police officer. More specifically, they contend that he was " 'exercising judgment in the enforcement of the criminal laws of the State' " and that, in response to their demonstration of that fact, Shuford failed to show that any exception to immunity previously recognized by this Court applies. Hollis v. City of Brighton, 950 So. 2d 300, 309 (Ala. 2006) (citations omitted). See also § 6-5-338(a) (providing, for a peace officer, "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties").

"Section 6-5-338(a), Ala. Code 1975, states:

"'Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as a peace officer ... by the state or a county or municipality thereof, ... and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.'

"This Court has also stated:

"'It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune. Section 6-5-338(b) provides: "This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers." ... See Ex parte City of Gadsden, 781 So. 2d 936, 940 (Ala. 2000).'

"Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003) (emphasis omitted).

"This Court has held that '[t]he restatement of State-agent immunity as set out by this Court in Ex parte Cranman

11

... governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a). Ex parte City of Tuskegee, 932 So. 2d 895, 904 (Ala. 2005).' Ex parte City of Montgomery, 99 So. 3d 282, 292 (Ala. 2012). Specifically,

"'peace officers are afforded immunity by Ala. Code 1975, § 6-5-338(a), and the test for State-agent immunity set forth in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), as modified in Hollis v. City of Brighton, 950 So. 2d 300 (Ala. 2006) (incorporating the peace-officer-immunity standard provided in § 6-5-338(a) into the State-agent-immunity analysis found in Cranman).... Under that formulation,

"'"'[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

"'"'....

"'"'(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.'"

"'Hollis, 950 So. 2d at 309 (quoting and modifying Cranman, 792 So. 2d at 405). In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:

12

"'"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

"'"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

"'Cranman, 792 So. 2d at 405.'

"Suttles v. Roy, 75 So. 3d 90, 94 (Ala. 2010) (emphasis omitted).

"'A State agent asserting State-agent immunity "bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." [Ex parte Estate of Reynolds,] 946 So. 2d [450,] 452 [(Ala. 2006)]. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable.'

"Ex parte Kennedy, 992 So. 2d 1276, 1282-83 (Ala. 2008); see also Wilson[ v. Manning], 880 So. 2d [1101] at 1111 [(Ala. 2003)] (noting that, when the burden at summary-judgment stage has shifted to the nonmovant, the nonmovant must present 'substantial evidence from which a reasonable juror could infer' the existence of the fact at issue).

13

"In order to establish that [Shuford's] claims arose from a function that would entitle [Officer Davis] to State-agent immunity, [Officer Davis] and the City were required to 'establish (1) that [Officer Davis was a] peace officer[] (2) performing law-enforcement duties at the time of the accident and (3) exercising judgment and discretion.' Ex parte City of Homewood, 231 So. 3d 1082, 1087 (Ala. 2017)."

Ex parte City of Montgomery, 272 So. 3d 155, 159-62 (Ala. 2018) (footnote omitted; emphasis added).

The foregoing rule is determinative, here. In sum, in order for Officer Davis and the City to show that they are entitled to immunity from Shuford's claims, they must show (1) that Officer Davis was a peace officer; (2) that he was performing his law-enforcement duties at the time of the allegedly tortious conduct giving rise to those claims; and (3) that he was also exercising his judgment and discretion.

As in City of Montgomery, supra, it appears undisputed that Officer Davis was a police officer and that he was performing his law-enforcement duties as a patrol officer, namely pursing a criminal suspect as permitted by the Written Directive, at the time of the collision. 272 So. 3d at 161. In fact, Shuford's complaint specifically alleged that Officer Davis was, at all relevant times, "acting within the line and scope of his employment as a police officer with the City." Shuford also did not

14

appear to argue that Officer Davis was not exercising his judgment and discretion in deciding to continue pursuing Osborne through the intersection. Instead, she argued in opposition to the summary-judgment motion below that Officer Davis was not entitled to immunity based on his purported failure to comply with § 32-5A-7, i.e., presumably that he exceeded any purported discretion or that his actions were unauthorized to the extent that he allegedly failed to activate his patrol car's visual and audible signals and "knowingly grossly exceeded the speed limit in pursuing the suspected vehicle."

Section § 32-5A-7 provides, in pertinent part:

"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ..., may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(b) The driver of an authorized emergency vehicle may:

"....

"(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"....

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is

15

making use of an audible signal meeting the requirements of Section 32-5-213[, Ala. Code 1975,] and visual requirements of any laws of this state requiring visual signals on emergency vehicles.

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

The audible signal required for use by police patrol vehicles is "a siren, bell, ululating multi-toned horns or other electronic siren type device." § 32-5-213(b), Ala. Code 1975.

Shuford appeared to contend that Officer Davis was not properly using his required warning devices and that, even if he was, he nonetheless failed, upon entering the intersection, to operate his patrol car "with due regard for the safety" of others. § 32-5A-7(d). As to Shuford's first claim, both Officer Davis's sworn testimony and his body-camera recordings refute the notion that the lights and siren on his patrol car were not activated before the collision. In fact, Shuford's own statement, as recorded on the accident report prepared at the scene, appears to contradict her present claim to the extent that she acknowledged immediately following the collision that she, at least, observed that the lights on Officer Davis's patrol car were in use.

16

Similarly, Officer Davis testified that he both reduced his speed upon approaching the intersection and that he proceeded through the intersection at a reduced speed, i.e., that he both slowed down before proceeding past the traffic signal and that he was, in opting to continue the pursuit, attempting to drive safely. In response, Shuford offered no substantial evidence refuting that showing by demonstrating that Officer Davis actually violated § 32-5A-7. See Ex parte Kennedy, supra. Accordingly, the trial court had before it only unrefuted evidence showing that Officer Davis and the City, as his employer, were entitled to immunity. The same is true for this Court, as Shuford failed to respond to the petition. See note 4, supra.

## Conclusion

Based on the foregoing, Officer Davis is entitled to immunity with respect to Shuford's claims against him. Because Officer Davis is immune, the City is also entitled to immunity for Shuford's vicarious-liability claims against it. We thus hold that both the City and Officer Davis have demonstrated a clear legal right to the requested relief and grant their petition for a writ of mandamus. The trial court is directed to enter a summary judgment in their favor on all claims.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Bryan, Sellers, Mendheim, Mitchell, Cook, and

McCool, JJ., concur.

Wise, J., recuses herself.